UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TARGET TRAINING INTERNATIONAL, LTD., | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 4:11-CV-02531 |
| EXTENDED DISC INTERNATIONAL LTD., | § § § § | |
| Defendant. | § | |

**DEFENDANT EXTENDED D.I.S.C. INTERNATIONAL OY LTD.'S
REPLY IN SUPPORT OF ITS
RULE 12(B)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Plaintiff's Opposition to Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry No. 25, filed under seal) ("Plaintiff's Response") shows why this Court lacks jurisdiction over Defendant Extended D.I.S.C. International Oy Ltd. ("EDI"). EDI is a small Finnish company with no offices or employees in the United States. EDI's only alleged jurisdictional contacts with Texas are (1) a contract with a nonparty Texas resident; (2) a minority ownership in a nonparty Texas company; (3) sales to a nonparty Texas company; and (4) a website maintained and operated solely in Finland. But, as explained in EDI's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry No. 12), (1) this lawsuit does not arise from or relate to the contract; (2) this lawsuit does not arise from or relate to the minority ownership; (3) the sales occurred in Finland and in Finnish currency, and Plaintiff does not allege that these sales infringed the patent; and (4) the website is not sufficiently interactive under the "sliding scale" approach to website jurisdiction. All other supposed jurisdictional contacts alleged in Plaintiff's Response -- e.g., a "North American" (not Texas)

distribution network and "North American" (not Texas) sales -- are actually the contacts of a nonparty Texas company, and Plaintiff fails to allege that even a single such sale by this nonparty company occurred in Texas or to a Texas resident. Therefore, personal jurisdiction over EDI is lacking, and Plaintiff's Complaint (Docket Entry No. 1) must be dismissed.

Plaintiff's alternative request for leave to conduct jurisdictional discovery should be denied because Plaintiff has failed to make a prima facie case of personal jurisdiction.

## I. THIS COURT LACKS PERSONAL JURISDICTION OVER EDI

Plaintiff's Complaint does not adequately plead personal jurisdiction over EDI. Plaintiff's Response includes new jurisdictional allegations, but even if the Court were to consider these new allegations, personal jurisdiction over EDI still does not exist

### A. Plaintiff's Complaint Does Not Adequately Plead Personal Jurisdiction.

Plaintiff's Complaint contains virtually no factual allegations of personal jurisdiction. Under *Twombly* and *Iqbal*, Plaintiff is required to plead factual allegations to support its legal conclusions.[1] Plaintiff's Complaint contains many legal conclusions that are unsupported by any facts.[2] These legal conclusions should be ignored by the Court. The only factual allegation in Plaintiff's Complaint of personal jurisdiction *in Texas* is EDI's "ownership of a portion of Extended DISC North America ('EDNA'), a Texas Corporation."[3] However, as shown below, Plaintiff's Complaint does not relate to this minority ownership interest. Although Plaintiff makes other conclusory allegations that relate *to the United States* in general, contacts with the

---

[1] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

[2] *See, e.g.*, Docket Entry No. 1, ¶ 4, pp. 1-2 ("EDI has purposefully availed itself of the benefits and protections of this District by virtue of its doing business in this District, and because the acts complained of occurred at least in part in this District."); ¶ 4, p. 2 ("EDI has systematic and continuous contacts with the forum in the form of activities purposefully directed at residents of the State, . . . and the current litigation results from activities that arise out of or relate to EDI's activities directed at the forum."); ¶ 5, p. 2 ("Defendant has purposefully directed their [its] infringing activities at residents of the state, and since acts of which Plaintiff complains have occurred in this District and elsewhere in the U.S.A.").

United States are irrelevant to determining whether jurisdiction exists in Texas. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2790 (2011). Because Plaintiff's Complaint fails to allege facts supporting either general or specific personal jurisdiction *in Texas*, the Court should dismiss the Complaint.

1. There is No General Jurisdiction over EDI.

General jurisdiction over EDI is lacking because EDI lacks the continuous and systematic contacts with Texas required to establish general jurisdiction. Plaintiff does not dispute the following statements in EDI's Motion: (1) EDI "is a Finnish limited liability company" with "no offices or operations in Texas, no employees in Texas, and owns no real or personal property in Texas"(Docket Entry No. 12, p. 1); (2) "EDI has no employees or agents in Texas, has no offices or operations in Texas, has no bank accounts in Texas, and owns no real or personal property in Texas"; "EDI does not design or manufacture products in Texas"; "EDI does not solicit business in Texas or advertise in Texas"; "EDI does not have a mailing address or registered agent in Texas"; and "EDI does not own patents, trademarks, or registered copyrights in the United States" (*Id.* at p. 2); (3) "All agreements between EDI, EDNA, and their predecessors were negotiated and entered into in Espoo, Finland -- not in Texas -- and are governed by Finnish -- not Texas -- law" (*Id.* at p. 3); (4) "The server [for EDI's website] is located and maintained in Finland" (*Id.*); (5) "EDI and EDNA are separate companies"; "EDNA makes its own business decisions, chooses its own office locations, hires its own staff, and acquires its own customers, all without input from or control by EDI" (*Id.*); and (6) "While EDI owns a minority 11% share of EDNA, EDI holds these shares in a passive manner"; "Neither EDI nor Mr. Sappinen sits on EDNA's board"; "EDI has never participated in EDNA's shareholder meetings"; "EDI has never

---

[3] Docket Entry No. 1, ¶ 4, p. 2.

provided capital or loans to EDNA"; "EDI has never requested or received annual reports, financial information, or similar information from EDNA" (*Id.* at p. 4).

Plaintiff nevertheless asserts that general jurisdiction over EDI can be based on EDI's supposed "distribution network" in the United States. Plaintiff cites *LSI Industries Inc. v. Hubbell Lighting, Inc*., 232 F.3d 1369, 1375 (Fed. Cir. 2000), where the court found that general jurisdiction existed based on the defendant's "millions of dollars of sales of lighting products in Ohio over the past several years and its broad distributorship network in Ohio," even though no sales of the allegedly infringing lighting product had occurred in Ohio. Plaintiff analogizes to *Hubbell* and claims that EDI has a "broad distribution" network in the United States "via EDNA."[4] *Hubbell* is distinguishable, however, because in *Hubbell* the defendant had its own distribution network. In contrast, here, EDI has *no* distribution network in the United States. To the extent a "distribution network" exists, it is EDNA's, not EDI's. Plaintiff's reliance on *Hubbell* is therefore misplaced.

Plaintiff also asserts that general jurisdiction can be based on EDI's website. But the cases cited by Plaintiff involved websites that were much more interactive than EDI's website. For example, in *Gorman v. Ameritrade Holding Corp*., 293 F.3d 506 (D.C. Cir. 2002), the website allowed customers to engage in all types of financial transactions.[5] That is not the case here. Plaintiff does not dispute that "EDNA's customers neither contract with nor pay EDI through its website or otherwise," and that "Neither EDNA nor its customers can buy anything

---

[4] Docket Entry No. 25, pp. 7-11.

[5] "The firm's customers can open Ameritrade brokerage accounts online; transmit funds to their accounts electronically; and use those accounts to buy and sell securities, to borrow from Ameritrade on margin, and to pay Ameritrade brokerage commissions and interest." 293 F.3d at 512. As a result, the "customers enter into binding contracts, the customers become the owners of valuable securities, and Ameritrade obtains valuable revenue." *Id.* at 513.

4

from EDI's website." Declaration of Jukka Sappinen, ¶ 27, p. 4 (Docket Entry No. 12, Exhibit A).[6]

Plaintiff also asserts that general jurisdiction can be based on EDI's contract with EDNA and on EDI's 11% ownership interest in EDNA. However, Plaintiff does not dispute that the contract was entered into in Finland, is governed by Finnish law, and is performed by EDI solely in Finland. Nor does EDI's passive ownership interest in EDNA create general jurisdiction. It is well-established that general jurisdiction cannot be based simply on the fact that a foreign corporation owns shares in a domestic company. In *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336-37 (1925), the Supreme Court held that general jurisdiction could not be asserted over a foreign corporation based merely on its ownership of a subsidiary that was present in the forum state. In *Cannon*, the foreign corporation owned 100% of the domestic subsidiary, yet no general jurisdiction existed. Here, EDI owns only 11% of EDNA. Such ownership does not support general jurisdiction.

For these reasons, Plaintiff has failed to show that EDI's contacts with Texas "are so 'continuous and systematic' as to render [EDI] essentially at home in [Texas]." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846 (2011) (citing *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 317 (1945)).

---

[6] Plaintiff's Response and its Attorney's Declaration conspicuously provide minimal information about EDI's website. The Declaration states that "EDNA provides EDI's product through a highly interactive website that allows customers to purchase reports, perform personal assessments and distribute the results." Declaration of Edmund Sease, p. 2 (Docket Entry No. 25). What Plaintiff fails to point out is that the customers who make these purchases are EDNA's customers (not EDI's customers), and the customers make their purchases from EDNA, not EDI. EDI does not have any relationship with such customers. And, despite the benefit of extensive discovery in a case that Plaintiff filed against EDNA and Plaintiff's selective use of that discovery in its Response (notwithstanding a protective order that precludes disclosure of such discovery or EDI's access to such discovery), Plaintiff fails to explain how this website is "highly interactive." As Plaintiff has recognized, "It is well established that courts should disregard legal conclusions or ultimate facts found in affidavits. *See F.R.C. Int'l, Inc. v. U.S.*, 278 F.3d 641, 643 (6th Cir. 2002);" Plaintiff's Response, p. 17 (Docket Entry No. 25).

2. <u>There is No Specific Jurisdiction over EDI.</u>

Specific jurisdiction is also lacking. Plaintiff incorrectly claims that specific jurisdiction exists because EDI has a "North American distribution network" through which EDI "ships and distributes its products."[7] This alleged distribution network is nonexistent, however. The "stream of commerce" cases cited by Plaintiff involved the physical shipment of goods from foreign manufacturers to domestic importers for sale in the United States.[8] Here, no such shipment and sale of goods occurs. EDI's product – personality assessment questionnaires and reports - are made available on EDI's website, which is operated and maintained solely in Finland. Activity is directed toward Finland, not Texas.

Further, the "stream of commerce" cases relied on by Plaintiff are of questionable validity following the Supreme Court's recent decision in *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780 (2011). In *J. McIntyre Machinery*, the Court clarified that the stream-of-commerce doctrine requires "purposeful availment." Specific jurisdiction in *J. McIntyre Machinery* was lacking because the foreign manufacturer had not targeted New Jersey, the state where the litigation was pending. Although the manufacturer had "directed marketing and sales efforts at the United States" and its products were sold in the United States through a distributor, the Court found this insufficient to support personal jurisdiction because "it [was the manufacturer's] purposeful contacts with New Jersey, not with the United States, that alone [were] relevant." 131 S. Ct. 2780, 2790. "These facts may reveal an intent to serve the U.S. market, but they do not show that [the manufacturer] purposefully availed itself of the New Jersey market." *Id*. Similarly, here, Plaintiff has not shown that EDI has targeted Texas, so

---

[7] Docket Entry No. 25, p. 10.

[8] *Viam Corp. v. Iowa Export-Import Trading Co*., 84 F.3d 424 (Fed. Cir. 1996) (automobile accessories); *Beverly Hills Fan Co. v. Royal Sovereign Corp*., 21 F.3d 1558 (Fed. Cir. 1994) (ceiling fans); *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd*., 647 F.2d 200 (D.C. Cir. 1981) (wine).

specific jurisdiction is lacking. In fact, EDI could not have targeted Texas because "EDI does not know where EDNA's customers are located or whether they are in Texas or elsewhere." Declaration of Jukka Sappinen, ¶ 27, p. 4 (Docket Entry No. 12, Exhibit A).

Plaintiff also incorrectly claims that specific jurisdiction exists because EDI owns 11% of EDNA. But Plaintiff's claims do not arise from or relate to this minority ownership, so it is not a basis for specific jurisdiction.[9]

Plaintiff also incorrectly claims that specific jurisdiction exists because EDI has a contract with EDNA. Plaintiff refers to many provisions of this contract, but not a single such provision is at issue in this case. Plaintiff does not dispute that the contract was entered into in Finland and is governed by Finnish law, that EDNA purchases the volume units from EDI in Finland in Euros (Finnish currency), and that EDI's performance under the contract occurs solely in Finland. Plaintiff alleges that EDI's performance under the contract infringes Plaintiff's "method" patent, but for infringement to occur, all steps of the method must be performed in the United States. *Zoltek Corp. v. United States*, 442 F.3d 1345, 1350 (Fed. Cir. 2006); *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005). Here, EDI's performance occurred solely in Finland. *See* Docket Entry No. 12, p. 13.

Plaintiff notably fails to allege that EDI's website is a basis for *specific* personal jurisdiction. Plaintiff's Complaint fails to mention the website, and Plaintiff's Response asserts only that the website is a basis for *general* personal jurisdiction. Therefore, the Court should not consider whether EDI's website is a basis for specific jurisdiction. In any event, the website is not sufficiently interactive to support jurisdiction.

---

[9] Plaintiff also incorrectly states that EDI's Motion fails to "mention [EDI's] ownership of a Texas corporation (11%)." To the contrary, EDI's Motion explicitly states that "EDI passively owns 11% of a Texas company called Extended DISC North America, Inc. ('EDNA')" (Docket Entry No. 12, p. 1), that "EDI owns 11%

Plaintiff conflates EDI's and EDNA's contacts in a last-ditch attempt to establish jurisdiction over EDI.  Plaintiff incorrectly states that "EDI's base of operation in the United States is located in Texas."  Docket Entry No. 25, p. 10.  EDI, however, operates only in Finland and has no base of operations in Texas or elsewhere in the United States.

Plaintiff also erroneously asserts that EDI's alleged "North American" sales are a basis for personal jurisdiction.  But EDI makes sales only in Finland.  As stated in the Declaration of Jukka Sappinen, "The volume units that EDNA purchases from EDI are purchased in Finland in Finnish currency, which is the Euro."  Declaration of Jukka Sappinen, ¶ 26, p. 4 (Docket Entry No. 12, Exhibit A).  Plaintiff's claims that "EDI has achieved a significant dollar amount of North American product sales per year" and that "EDI has achieved a significant dollar amount of North American product sales per year for at least the years 2008-2010, in at least the seven figure range" are not only conclusory but inaccurate.  EDI does not know how Plaintiff arrived at these figures.[10]  Finally, "North American" sales are irrelevant to jurisdiction *in Texas*.  The fact that Plaintiff refers to "North American" rather than "Texas" sales illustrates EDI's lack of contact with Texas.

### B. The Exercise of Jurisdiction over EDI Would Offend Traditional Notions of Fair Play and Substantial Justice

Even if minimum contacts existed – which they do not – the Court's exercise of personal jurisdiction over EDI would offend traditional notions of fair play and substantial justice. Plaintiff does not dispute that "EDI would be required to travel at least 17 hours . . . and over 8,500 kilometers . . . to Houston"; that "[t]he travel cost would be significant"; that "EDI would

---

of EDNA" (*Id.*, p. 14), and that "EDI owns a minority 11% share of EDNA" (Declaration of Jukka Sappinen, ¶ 30, p. 4 (Docket Entry No. 12, Exhibit A).

[10] If the statements stem from discovery adduced from Plaintiff's lawsuit against EDNA, the discovery in that suit is protected from disclosure by a Protective Order.  EDI does not have access to the discovery in that case.

be in a time zone eight hours away"; and that "EDI is a small Finnish company, with no full-time employees."[11]  Plaintiff simply cites *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285 (Fed. Cir. 2009), for the proposition that the "United States has a substantial interest in enforcing the federal patent laws." 563 F.3d at 1299 (citation and quotation omitted).  But the United States has no interest in enforcing its patent laws outside the United States.  Here, all of EDI's allegedly infringing activities occurred in Finland, not Texas.[12]  Plaintiff cites no case where personal jurisdiction was asserted on such thin jurisdictional facts.

## II.   PLAINTIFF'S ALTERNATIVE REQUEST FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY SHOULD BE DENIED.

Plaintiff's alternative request for leave to conduct jurisdictional discovery should be denied.  Not only is this request an implicit acknowledgment that personal jurisdiction is nonexistent, but it is a desperate attempt to force a settlement by driving up litigation costs.  Jurisdictional discovery is inappropriate where a plaintiff has failed to present a prima facie case of personal jurisdiction, and courts will not allow a plaintiff to conduct a fishing expedition in order to make such a case.  *See, e.g., Bonvillain v. Louisiana Land & Exploration Co.*, 702 F.Supp.2d 667, 686 (E.D. La. 2010) (citing *Deemer v. Bontz*, No. 4:07-CV-380-Y, 2007 WL 3129485, *8 (N.D. Tex. Oct. 25, 2007))*; see also Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982) ("When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted.").  Because Plaintiff's Complaint fails to state a prima facie of personal jurisdiction, jurisdictional discovery should be denied.  Finally, Plaintiff's request is unnecessary

---

Plaintiff should not be allowed to allude to material that is not available to EDI and which EDI is not in a position to review or refute.

[11]  Docket Entry No. 12, pp. 17-18.

[12]  EDI entered into its contract with EDNA in Finland; the contract is governed by Finnish law; EDNA pays EDI in Finnish currency; and EDI's website is maintained and operated solely in Finland.  In fulfilling its contractual obligations with EDNA, EDI never leaves Finland.

because Plaintiff has already served EDI with jurisdictional discovery in the form of interrogatories and a request for production of documents.

### III.     CONCLUSION

For these reasons, Plaintiff's Complaint should be dismissed for lack of personal jurisdiction over EDI.

DATED: December 29, 2011                Respectfully submitted,

                                                AJAMIE LLP

By: */s/ Dona Szak*
    Thomas R. Ajamie
    State Bar No. 00952400
    Dona Szak
    State Bar No. 19597500
    John S. "Jack" Edwards, Jr.
    State Bar No. 24040851
    Pennzoil Place - South Tower
    711 Louisiana, Suite 2150
    Houston, TX  77002
    Telephone:  (713) 860-1600
    Facsimile:   (713) 860-1699

**ATTORNEYS FOR DEFENDANT EXTENDED D.I.S.C. INTERNATIONAL OY LTD.**

**CERTIFICATE OF SERVICE**

      I certify that on December 29, 2011, a true and correct copy of the foregoing document was served by ECF on the following counsel of record:

Edmund J. Sease
Bradley J. Powers
MCKEE, VOORHEES & SEASE, P.L.C.
801 Grand Avenue, Ste. 3200
Des Moines, IA  50309-2721

Michael E. Wilson
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, TX  77010-3095

                                                 */s/ Dona Szak*
                                                 Dona Szak